IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| CAREMARK, L.L.C. and<br>MISSOURI CVS PHARMACY, L.L.C.,<br><br>Plaintiffs,<br><br>vs.<br><br>RENEE VAN ALST,<br><br>Defendant. | )<br>)<br>)<br>)<br>)  Case No. 4:20-cv-00436-BP<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' SUGGESTIONS IN SUPPORT OF THEIR
MOTION TO COMPEL ARBITRATION
AND TO STAY THE STATE COURT ACTION**

Plaintiffs Caremark, L.L.C. and Missouri CVS Pharmacy, L.L.C. (together, "Plaintiffs" or "CVS") submit these Suggestions in Support of their Motion to Compel Arbitration of Defendant's state law claims arising from her employment.

**BACKGROUND**

Defendant Renee Van Alst ("Defendant" or "Van Alst") is a former employee of Plaintiff Caremark, L.L.C. Van Alst was hired on November 4, 2016 as a call center representative. *See* Declaration of Jessica Austin, attached as Ex. 2 to the Complaint (Dkt. 1) ("Austin Decl."), at ¶ 5. As part of her employment, on November 2, 2016, Van Alst electronically executed the CVS Health Arbitration Agreement (the "Arbitration Agreement"). *Id.* at ¶ 11 and Ex. A. Pursuant to the Arbitration Agreement, CVS and Defendant mutually agreed to arbitrate all claims arising from or related to Defendant's employment. *Id.* at ¶ 12 and Ex. A.

Pursuant to the Arbitration Agreement, Van Alst and CVS each waived the right to pursue employment-related claims in court and agreed to submit such disputes to binding arbitration. Van Alst agreed to submit to binding arbitration all claims against CVS (and its affiliates, subsidiaries,

employees and agents) arising out of her employment relationship with CVS. Specifically, Van Alst agreed as follows:

> **1.** **Mutual Agreement to Arbitrate Claims.** . . . . Under this Agreement, [Van Alst] and CVS agree that any dispute between [Van Alst] and CVS that is covered by this Agreement ("Covered Claims") will be decided by a single arbitrator through final and binding arbitration only and will not be decided by a court or jury or any other forum, except as otherwise provided in this Agreement.
>
> **2.** **Claims Covered by this Agreement.** Except as otherwise stated in this Agreement, Covered Claims are any and all claims, disputes or controversies that CVS may have, now or in the future, against [Van Alst] or that [Van Alst] may have, now or in the future, against CVS or one of its employees or agents, arising out of or related to [Van Alst's] employment with CVS or the termination of [Van Alst's] employment. Covered Claims include but are not limited to disputes regarding wages and other forms of compensation, hours of work, meal and rest break periods, seating, expense reimbursement, leaves of absence, harassment, discrimination, retaliation and termination arising under the Civil Rights Act of 1964, Americans with Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act ("ERISA"), Genetic Information Non-Discrimination Act, and other federal, state and local statutes, regulations and other legal authorities relating to employment. Covered Claims also include disputes arising out of or relating to the validity, enforceability or breach of this Agreement . . . .

Austin Decl., at ¶ 12 and Ex. A. The Arbitration Agreement executed by Van Alst also provided Van Alst with the opportunity to opt out of arbitration. Specifically, the Arbitration Agreement provided as follows:

> **7.** **Your Right to Opt Out of Arbitration.** Arbitration is not a mandatory condition of [Van Alst's] employment at CVS. If You wish, [Van Alst] can opt out of this Agreement for a limited time and, by doing so, not be bound by its terms. To opt out, [Van Alst] must mail a written, signed and dated letter stating clearly that You wish to opt out of this Agreement to CVS Health, P.O. Box 969, Woonsocket, RI

> 02895. <u>In order to be effective, Your opt out notice must be postmarked no later than **30 days** after the date you agree to the Agreement below</u>.

*Id.* at ¶ 13 and Ex. A (emphasis in original). Despite having the opportunity to do so, Van Alst did not opt out of the Arbitration Agreement. *Id.* at ¶ 15.

On November 14, 2019, in contravention of the valid, enforceable Arbitration Agreement, Van Alst filed a lawsuit in the Circuit Court of Jackson County, Missouri, styled *Renee Van Alst v. Missouri CVS Pharmacy, LLC, d/b/a CVS Pharmacy #16731*, et al., Case No. 1916-CV30564 (the "State Court Action") asserting claims against Plaintiff Missouri CVS Pharmacy, L.L.C. for discrimination and retaliation under the Missouri Human Rights Act and violation of the Missouri Service Letter Law. *See* Complaint, Ex. 1. Van Alst also asserted a claim against her former supervisor for trespass to chattels. CVS reminded Defendant of her obligations under the Arbitration Agreement by providing notice to her counsel, but Defendant refused CVS's demand for arbitration.

Plaintiffs have filed, contemporaneous with this Motion and Suggestions, a Complaint in this Court seeking an Order compelling the parties to arbitrate Defendant's claims and staying the State Court Action.

## **ARGUMENT**

The Arbitration Agreement executed by Van Alst is a valid, enforceable agreement that covers the subject matter of Van Alst's claims against CVS and its employees. The Federal Arbitration Act ("FAA") governs the parties' Arbitration Agreement, and mandates that the Arbitration Agreement be enforced according to its terms. Accordingly, this Court should compel arbitration of Van Alst's claims.

**I.      THE FAA GOVERNS THE PARTIES' ARBITRATION AGREEMENT**

The FAA governs any written arbitration agreement and deems it valid, except where ordinary contract principles invalidate the agreement. The FAA provides that any "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The term "involving commerce" is interpreted broadly, such that the FAA governs any arbitration agreement that affects commerce in any way. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270-77 (1995); *see also Perry v. Thomas*, 482 U.S. 483, 490 (1987) (the FAA "embodies Congress's intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause"). The FAA governs arbitration agreements between local employees and nationwide companies. *See, e.g., Circuit City Stores v. Adams*, 532 U.S. 105, 121-24 (2001) (arbitration agreement between local store manager and nationwide retailer subject to the FAA).

Here, the Arbitration Agreement specifically states that it is governed by the FAA. Austin Decl., at Ex. A, p. 2, ¶ 8(d) ("This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce."). Further, the agreement to arbitrate is governed by the FAA because Van Alst was employed by a company engaged in commerce.[1] Accordingly, the FAA governs the parties' agreement to arbitrate.

---

[1] Plaintiffs are citizens of Rhode Island and entered into a transaction (the Arbitration Agreement) with Plaintiff, a Missouri citizen. Complaint (Dkt. 1), ¶¶ 3-5. The FAA governs the applicability of arbitration agreements in all contracts regarding interstate commerce or "evidencing a transaction involving commerce." *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 805 (Mo. 2015). This Court has previously held contracts between parties with diverse citizenship fall under the FAA. *See PR Grp., LLC v. Windmill Int'l Ltd.*, No. 14-0401-CV-W-BP, 2016 WL 3033617, at *2 (W.D. Mo. Feb. 1, 2016).

## II. THE FAA MANDATES THAT THE PARTIES' VALID ARBITRATION AGREEMENT BE ENFORCED ACCORDING TO ITS TERMS

The FAA requires courts to enforce arbitration agreements according to their terms. *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1052 (8th Cir. 2013); *American Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013). The purpose of the FAA is to ensure private arbitration agreements are enforced. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. Of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)). "The Supreme Court has stated repeatedly that this provision establishes a liberal federal policy favoring arbitration agreements." *Owen v. Bristol Care*, 702 F.3d at 1052.

A motion to compel arbitration **must** be granted if a valid arbitration clause exists that encompasses the dispute between the parties. *M.A. Mortenson Co. v. Saunders Concrete Co.*, 676 F.3d 1153, 1156–57 (8th Cir. 2012) (emphasis added) (internal quotation omitted). Courts look to state contract law to determine whether an enforceable arbitration agreement exists. *Id.* "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Indeed, a court may not deny arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citation omitted). In this case—as explained below—the parties have a valid agreement to arbitrate, all of Van Alst's claims are within the scope of that agreement, and all of Van Alst's claims are, therefore, subject to compulsory arbitration. Accordingly, CVS's motion to compel arbitration should be granted.

### A. The Arbitration Agreement Delegates the Gateway Issues to the Arbitrator

Before reaching these gateway issues, however, the Court must examine the underlying agreement to determine whether the parties have agreed to commit the threshold question of

5

arbitrability to the arbitrator. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006). If so, under *Rent-A-Center*, the arbitrator must address the threshold question of arbitrability.

Here, the Arbitration Agreement clearly and unmistakably provides that "disputes arising out of or relating to the validity, enforceability, or breach of this [Agreement]" shall be decided by an arbitrator, not a court. Austin Decl., at ¶ 12 and Ex. A at ¶¶ 1, 2. Therefore, any question as to the validity of the Arbitration Agreement and whether it applies to this dispute has been delegated to, and must be decided by, the arbitrator.

Moreover, the Arbitration Agreement also incorporates by reference the American Arbitration Association's Employment Arbitration Rules and Mediation Procedures. Paragraph 4(c) of the Arbitration Agreement provides in pertinent part:

> The arbitration will be administered by the American Arbitration Association ("AAA") and will be conducted in accordance with the Employment Arbitration Rules and Mediation Procedures of the AAA ("AAA Rules") then in effect. The AAA Rules can be found at the AAA website (www.adr.org), by calling the AAA at 800-778-7879, or by requesting a copy from the CVS Human Resources Department.

Austin Decl., at Ex. A at ¶ 4(c). Rule 6(a) of the AAA Rules provides: "<u>The Arbitrator shall have the power to rule on his or her own jurisdiction</u>, including any objections with respect to the <u>existence</u>, <u>scope</u> or <u>validity</u> of the arbitration agreement." AAA Employment Arb. Rules and Mediation Procedures, Rule 6(a)(emphasis added). Incorporation of the AAA Arbitration Rules is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *See, e.g., Taylor*

*v. Dolgencorp, LLC*, Case No. 1:19-cv-00132-SNLJ, 2019 U.S. Dist. LEXIS 200198, at *4 (E.D. Mo. Nov. 19. 2019); *Fambrough v. Green*, Case No. 4:19-00158-CV-RK, 2019 U.S. Dist. LEXIS 164822, at * 7-8 (W.D. Mo. Sept. 26, 2019); *State ex re. Newberry v. Jackson*, 575 S.W.3d 471, 475 (Mo. 2019). *See also Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069 (9th Cir. 2013)) (observing that "virtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability"); *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006); *Terminix Int'l Co. v. Palmer Ranch, LP*, 432 F.3d 1327, 1332 (11th Cir. 2005); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005).

Here, as in the cases cited above, the incorporation of AAA's Employment Arbitration Rules into the Arbitration Agreement mandates that all questions regarding arbitrability, including existence, scope and validity of the agreement to arbitrate must be submitted to arbitration.

### B. A Valid Agreement to Arbitrate Exists

Under Missouri law, an agreement to arbitrate is valid when it reflects the essential contract elements of offer, acceptance, and bargained-for consideration. *Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 436 (Mo. Ct. App. 2010); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (stating, in the context of the FAA, that in deciding whether the agreement to arbitrate is valid, courts "should apply ordinary state-law principles that govern the formation of contracts"). All three elements exist here.

1. **Offer and Acceptance**

"An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Walker v. Rogers*, 182 S.W.3d 761, 767 (Mo. Ct. App. 2006) (quoting RESTATEMENT (SECOND) OF CONTRACTS, § 24 (1981)) (internal quotation omitted); *see also Agri Process Innovations, Inc. v. Envirotrol, Inc.*, 338 S.W.3d 381, 390 (Mo. Ct. App. 2011). Acceptance is "a manifestation of assent to the terms . . . made by the offeree in a manner invited or required by the offer." *Walker v. Rogers*, 182 S.W.3d at 768 (quoting RESTATEMENT (SECOND) OF CONTRACTS, section 50(1)) (internal quotation omitted). Offer and acceptance (also referred to as mutual assent) is often demonstrated by the parties' signatures on a written agreement. *Baier v. Darden Rests.*, 420 S.W.3d 733, 738 (Mo. Ct. App. 2014) ("A party's signature on a contract remains the common, though not exclusive, method of demonstrating agreement.").

The Arbitration Agreement is supported by offer and acceptance. After CVS presented Van Alst with the Arbitration Agreement, under which both parties mutually agreed to submit Covered Claims (which expressly include the claims set forth in Plaintiff's Petition) to binding arbitration, Van Alst has the opportunity to opt out of the Agreement, with no adverse consequences if she chose to do so. Austin Decl., at Ex. A, p. 2, ¶ 7. On November 2, 2016, Van Alst executed the Arbitration Agreement and, thereafter, did not opt out of the Arbitration Agreement within thirty days. Austin Decl., at ¶¶ 11, 15 and Ex. A.

2. **Consideration**

Consideration for the Arbitration Agreement is the parties' mutual agreement to waive their right to a trial by court or jury and submit all disputes to arbitration. Van Alst agreed to arbitrate

her claims against CVS, and CVS agreed to arbitrate its claims against Van Alst. Both parties waived any right to proceed in any other forum.

Mutual promises to arbitrate claims constitute consideration to support an arbitration agreement. *See State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 809 (Mo. banc 2015) (finding the plaintiff's argument that the agreement to arbitrate lacked consideration failed where both parties had promised to refer disputes to arbitration); *see also Karzon v. AT&T, Inc.*, No. 4:13-CV-2202 (CEJ), 2014 WL 51331, at *3 (E.D. Mo. Jan. 7, 2014) ("Under Missouri law, a mutual agreement between employer and employee to arbitrate is enforceable."); *McIntosh v. Tenet Health Sys. Hosps.*, 48 S.W.3d 85, 89 (Mo. App. 2001) (enforcing arbitration agreement containing mutual promises to arbitrate disputes). Mutuality of obligation exists where an arbitration provision requires each party to arbitrate a particular class of disputes. *Greenpoint Credit, L.L.C. v. Reynolds*, 151 S.W.3d 868, 875 (Mo. Ct. App. 2004).

Here, the Arbitration Agreement contains a mutual promise to arbitrate disputes. It provides, "**You and CVS** agree that any dispute between **You and CVS** that is covered by this Agreement . . . will be decided by a single arbitrator through final and binding arbitration only and will not be decided by a court or jury or any other forum . . . ." Austin Decl., at ¶ 12 and Ex. A at p. 1, ¶ 1 (emphasis added). The parties' promises to arbitrate are mutual, and CVS has reserved no rights for itself that would render its promise illusory.

Because there existed offer, acceptance, and consideration, the Arbitration Agreement is valid and enforceable. The FAA requires the Court compel arbitration.

**C.    Plaintiff's Claims Are within the Scope of the Arbitration Provision.**

In the Arbitration Agreement, Van Alst expressly agreed to arbitrate "any and all claims, disputes or controversies" that she had "against CVS or one of its employees or agents, arising out

of or related to [her] employment with CVS or the termination of [her] employment." Austin Decl. at ¶ 12 and Ex. A at p. 1, ¶ 2. The Arbitration Agreement specifically lists, as examples of covered claims, "harassment, discrimination, retaliation and termination arising under . . . other federal, state and local statutes, regulations and other legal authorities relating to employment." *Id.* Thus, the Arbitration Agreement clearly encompasses Van Alst's claims against CVS for discrimination and retaliation under the MHRA and for violation of the Missouri Service Letter Law, RSMo. 290.140,[2] and any claims against CVS's employees. *See also PRM Energy Systems, Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 836–37 (8th Cir. 2010) (finding arbitration clause covering "all disputes arising under" the agreement was "generally broad" in scope and holding that arbitration may be compelled "as long as the underlying factual allegations simply touch matters covered by the arbitration provision"); *3M Co. v. Amtex Sec., Inc.,* 542 F.3d 1193, 1199 (8th Cir. 2008) (noting that clauses requiring arbitration of "any" or "all" disputes are "extensive"). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001).

Because Van Alst has agreed to submit any claims arising from her employment relationship with CVS to binding arbitration, the Court should compel arbitration of Van Alst's claims.

### III. THE STATE COURT ACTION MUST BE STAYED PENDING ARBITRATION

The FAA provides that courts "shall . . . order" parties to proceed to arbitration, and "stay

---

[2] While Van Alst conclusorily asserts that "[t]his cause of action arose after and outside the scope of Plaintiff's employment with CVS," *see* Petition, ¶ 54, that allegation should be disregarded and the well-pleaded facts in Van Alst's Petition should control. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that courts "are not bound to accept as true legal conclusions couched as factual allegations"). Indeed, the actions giving rise to Van Alst's claim for Violation of the Missouri Service Letter Law, Mo. Rev. Stat. 290.140, clearly arise out of and are related to Van Alst's employment with CVS.

the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. §§ 3-4. Thus, the Court should issue an Order staying the State Court Action pending arbitration of Defendant's claims.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court order the parties to arbitrate all claims arising out of or related to Defendant's employment, including Defendant's claims against CVS and CVS employees in the State Court Action, and order a stay of the State Court Action.

Respectfully submitted,

/s/ Sara K. McCallum
Sara K. McCallum #67473
LITTLER MENDELSON, P.C.
1201 Walnut, Suite 1450
Kansas City, MO  64106
Telephone: 816.627.4400
Facsimile: 816.627.4444
smccallum@littler.com

ATTORNEYS FOR PLAINTIFFS